GERTRUDE C. COLEMAN, Complainant,

*v.*

LUCILLE C. COLEMAN, Defendant.

369 S. W. 2d 557.

(*Knoxville,* September Term, 1962.)

Opinion filed July 15, 1963.

CHAMBLISS, CHAMBLISS & HODGE, Chattanooga, for complainant.

TIMBERLAKE, BROWN, CURTIS & SUMMAR, Chattanooga, for defendant.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

Gertrude C. Coleman, Complainant below, filed a bill in the Chancery Court of Hamilton County against Lucille C. Coleman, Defendant, attempting to set aside a divorce decree rendered in 1945 in the Circuit Court of Hamilton County wherein a divorce was granted George O. Coleman from Gertrude C. Coleman for whom publication was made while Gertrude C. Coleman was on a visit to Milwaukee, Wisconsin. As may be assumed, George O. Coleman, the husband of both Complainant and Defendant at different times, is now deceased, having died in 1962. Complainant seeks to set aside the divorce granted in 1945 by her bill filed on September 26, 1962, wherein she alleges fraud. The parties will be referred to herein as they appeared in the lower court.

The original petition avers that in September of 1945 the Complainant, who married George O. Coleman in 1924, took her daughter, Dorothy, age 13 years, and went at the suggestion of her husband's sister to Milwaukee

and remained there for the winter and did nursing in a hospital, after which she returned to Chattanooga. That while Complainant was in Wisconsin, George O. Coleman filed a petition for divorce in the Circuit Court of Hamilton County alleging desertion and that the Complainant had absented herself without reasonable cause for two years and that publication was made for the Complainant in the "Labor World" which Complainant knew nothing of. Therefore, she alleges that the divorce was obtained by fraud and is void. Complainant further alleges that the said George O. Coleman left a will in which he stated that the Defendant, Lucille C. Coleman, as his wife, should receive a portion of his estate and nominated her as the Executrix of his will. The petition also prays for certain information from the Defendant as to her relationship with the said George O. Coleman, where and when she first lived with him, who paid the rent, the date of their marriage and the whereabouts of the court file in the 1945 divorce proceedings.

After motions to strike from the prayer of the bill certain matters which the Defendant insists were not pertinent, the Defendant demurred as follows:

"Comes the Defendant, Lucille C. Coleman, by her Attorney and demurs to the original petition heretofore filed against her insomuch as said petition does not state a cause of action upon which relief can be granted and specifically a divorce decree alleged to have been entered over sixteen (16) years prior to the filing of a bill in Chancery Court to set aside said decree upon the grounds of fraud, said action is prevented by the doctrine of laches as a matter of law."

The demurrer was sustained by the Court, but the Com-

plainant was granted ten days within which to amend her original bill.

On November 2, 1962, Complainant amended her bill going more into detail and in which she attempts to justify the delay of sixteen years in attacking the Circuit Court decree.

One of the new allegations is that before she left for Milwaukee, the Complainant went to an attorney of the Chattanooga bar and talked with him about her rights, told him of her proposed visit, and paid him Ten ($10.00) Dollars to observe the actions of the said George O. Coleman while she was gone and especially as to whether or not he took any legal action against her.

She further states in her amended bill that after she had been in Wisconsin about three months, her sister-in-law informed her that her husband had called for her, but on being advised that she, Complainant, was at work, he told his sister to tell Complainant that, "He was now a free man." That upon Complainant's return to Chattanooga, she talked to her attorney and told him what her sister-in-law had reported to Complainant, but her attorney told her that he knew of no action that her husband had taken and that if he had secured a divorce she might be better off.

The amended bill further shows that the Complainant and her then husband, George O. Coleman, had not lived together since about 1940, but that he had cohabited with the Defendant, Lucille C. Coleman, at different places in Hamilton County since that time.

Complainant's amended bill further shows "that in the years after 1945, the said George O. Coleman continued

to live with the Defendant as he had before 1945, visiting Complainant one Christmas, sent money to Complainant, and several times stated that he would like to come back and was sorry he had left.'' In other words, the petition shows on its face that the parties have not lived together since 1940.

The Defendant again demurred to the bill as amended as follows:

''Comes the defendant, Lucille Cook Coleman, both individually and as Executrix of the Estate of George O. Coleman, deceased, and demurs to the Amended Bill and whole cause heretofore filed against her and against her deceased husband, George O. Coleman, and his estate, wherein the complainant seeks to set aside and render void a divorce decree awarded to the deceased George O. Coleman, by the Circuit Court of Hamilton County in the year 1945; whereby, the marriage of the complainant to the deceased was dissolved, and as the grounds for her Demurrer, she says:

''That no relief can be granted to the complainant upon the whole cause as amended, even if proved to be completely true in substance and in fact, because it is alleged in the Amended Bill that 'she took no action to set it aside until September 26, 1962, a lapse of a little less than seventeen years,' and the doctrine of laches would bar her present action so to do; insomuch, as complainant has failed to allege in her Amended Bill a reasonable excuse for her failure to initiate said action, within a reasonable period of time, after the decree was entered.

''In complainant's Amended Bill, even taking into consideration all allegations improper thereto, com-

plainant has averred nothing more than in the year 1945 she became generally aware that the deceased had obtained a divorce from her in that year and that she for various reasons failed to verify this action by reading a decree which was a matter of public record, and that for these reasons she should be excused from initiating her action to set the decree aside before the expiration of almost seventeen years.

"From all of which defendant avers that the complainant has failed to state a cause of action by aid of the Amended Bill because of the application of the doctrine of laches, and she, therefore, prays that the Demurrer be sustained and that the whole cause be again dismissed, at complainant's cost, without leave unto the complainant to further amend."

The Chancellor again sustained the demurrer. We quote pertinent parts from his memorandum opinion:

"It is not necessary for the Court to act upon the motion to strike, for the obvious reason that, treating the demurrer as admitting all the averments of the bill to be true, it still appears that complainant ever since 1940 knew that her husband left her for another woman and that he was wanting to obtain a divorce, which she was informed he finally did obtain while she was working in Wisconsin. Complainant relied upon an unnamed attorney, to whom she paid $10.00, to keep her advised concerning any divorce proceeding instituted against her by George Coleman. The attorney was negligent in failing to check the rule dockets of the Circuit and Chancery Courts. Checking the Circuit Court 1945 rule docket would have revealed the record of the suit of George O. Coleman against complainant.

"The general rule that professional negligence, unskillfulness or incompetency of counsel is imputed to the client is applicable in an action in equity to obtain relief from a judgment, so that the unexcusable fault or negligence of an attorney will preclude the client from obtaining equitable relief from a judgment—.' 30A Am.Jur., Judgments, Section 818.

"Complainant was informed in 1945 that her then husband was a free man, and she believed that information to be true. Thereafter she waited for seventeen years until after his death before seeking the Court's aid in having the decree obtained in 1945 set aside for fraud. This action by complainant was taken, according to the bill, not because complainant was aggrieved, but rather for the reason that the divorced, deceased husband bequeathed only $100.00 each to his two children, and that the daughter in a separate action found that she had no legal right to have the will set aside.

"The demurrer is sustained; the bill dismissed at complainant's cost, and complainant will have thirty days in which to take and perfect her appeal."

Trying to stay in Court, the Complainant again asked leave to amend her original bill based upon the affidavit of her solicitor which reads as follows:

"I am a solicitor for Gertrude C. Coleman in this case. I make this affidavit in support of a motion to be allowed to file an amended bill.

"The facts set forth in the amended bill have developed by degrees and as alleged many of the important allegations as to the defendant's conduct which tends to negative her right in equity to plead laches are

within her personal knowledge. Considerable effort has been made to locate persons who know these facts. As the matter goes back to the fall of 1945 it is obscured by time.

"If allowed to file the amended bill, upon answer the case can be expedited and disposed of and probably in a final fact finding that will conclude the matter in this court. Delay arising from a possible appeal will inconvenience all parties.

"The case is further complicated by the fact that in the Probate Division the complainant here has filed a dissent from the will and in that case, unless the decree sustaining the demurrer in this case is res judicata the issues arise in that matter again."

The Chancellor in his discretion refused to allow the Complainant to file another amended bill as in his opinion the amended bill raised no new question not previously raised by the Complainant. However, in perfecting her appeal, the Complainant was allowed to copy the proposed amended bill into the record.

The only assignment of error submitted by Complainant is that the lower court was in error in sustaining the demurrer and holding that the proposed amended bill raised no new question and therefore the amendment would not be allowed.

█ Our courts are liberal in granting amendments. In Gibson's Suits in Chancery, Fifth Edition, Page 782, Article 721, the ruling is stated: "Leave to amend a bill, or to file an amended bill, is not required unless made after argument of demurrer, or after answer filed; but after such argument or answer the Complainant can

amend his bill, or file an amended bill, only by leave of the Chancellor given in open Court, or at Chambers, and upon such terms as he may impose.'' In the case at bar the court had already allowed one amendment and had considered the second amendment which he refused to allow. We have read the amended bill which the Chancellor would not permit to be filed and we do not believe that he abused his discretion and we concur in his finding that no new material allegations are contained in the proposed amendment.

The more serious question confronting this Court is whether a sufficient cause of action was stated in Complainant's bill, as amended, that would require the hearing of evidence, or was the Chancellor correct in sustaining the demurrer.

The most serious allegation made by George Coleman in the ex parte divorce hearing in 1945 was that the defendant, Gertrude Coleman, the complainant herein, was guilty of willful and malicious desertion for two years and proceeded against her by publication when in fact she was a resident of Hamilton County, Tennessee, and was out of State only temporarily. Now if Gertrude Coleman had attacked this decree within a reasonable length of time and during the life of her husband, George Coleman, she would have been entitled to a hearing. In the case of *Martin v. Martin,* 200 Tenn. 196, 292 S.W.2d 9, this Court held, speaking through Justice Prewitt, that Chancery Court has the power and jurisdiction to set aside a divorce decree obtained by fraud. The main question before this Court is whether or not the Complainant acted soon enough and in good faith.

In Vol. 10 of Ruling Case Law, page 395, article 142,

under the subject of "Laches," it is stated: "It is a familiar doctrine that, apart from any question of statutory limitations, courts of equity will discourage laches and delay the enforcement of rights. The general principle is that nothing can call forth the Court of Chancery into activity but conscience, good faith and reasonable diligence. Where these are wanting, the Court is passive and does nothing."

Briefly, let us consider Complainant's bill in the most favorable light. She admits that she and her husband had not lived together since 1940. She states in her bill that she left the State of Tennessee in September of 1945 and went to Milwaukee, Wisconsin, where she stayed throughout the winter. She says that before she left, she paid an attorney $10.00 to look after her interests and that while she was in Milwaukee her sister-in-law received a call from her then husband wherein he stated that, "He was a free man." She states that sometime thereafter she returned to Chattanooga and contacted the attorney to whom she had paid $10.00 and he told her that he had heard nothing of her husband's activity in obtaining a divorce and that if he did obtain one, it might be best. Despite all of these flags of warning, the Complainant herein never went to the courthouse and checked the records, or had them checked, and insofar as the record discloses no bona fide attempt was ever made to live again with her husband, who continued to live until his death in 1962 with the Defendant, Lucille C. Coleman. Now, after the death of George O. Coleman and when the Complainant herein learned that he had left a will and had given the children only $100.00 each and had named the Defendant Lucille C. Coleman, as Executrix

of his will, then and not until then did she consider any action to set aside the divorce decree rendered in 1945.

In a recent case of *Hill v. Hill* reported in 46 Tenn.App. 196, 326 S.W.2d 851, the Court of Appeals of the Western Section of Tennessee, speaking through Judge Carney, certiorari denied by this Court, held that the petitioner was not entitled to have a divorce decree set aside where the wife told the husband that she was going to obtain a divorce and he was in the city in which his wife had filed the divorce action shortly thereafter, but failed to inquire about the divorce and he failed to show good cause for waiting one year before attacking the decree.

We feel that the case at bar is very much on all fours with the Hill case, except that in the Hill case the husband seeking to set aside a divorce decree waited only one year, while in the case before us, Complainant had waited sixteen years and until her former husband died. While it is true that the Hill case was decided on bill and answer and both parties testified, we must assume that in the case at bar the Complainant can prove the material parts of her bill.

■ We have carefully read the record in the light most favorable to Complainant and we do not believe that the Complainant acted with reasonable diligence, with good conscience and good faith. She states her position in the tenth paragraph of the first amendment, "That said George O. Coleman often stated that he desired to and would take care of their children, and it was not until the will was probated that Complainant found he had not done so. That after she found that bequests of only $100.00 each were provided by the will for the two children, being disturbed by the failure to substantially con-

sider his children and grandchildren, all needing even a small legacy, she consulted an attorney in Chattanooga to find out whether the children had any rights other than by the will.''

We do not believe that the Complainant has shown good cause for failing to make further inquiry upon her return from Milwaukee in 1946 as to her husband's marital status. She had about sixteen years in which to file a bill wherein her husband then living would certainly have been a material party. We believe she waited too long.

For the reasons stated, the assignment of error is overruled and the judgment of the Chancellor affirmed.

The Complainant is taxed with the costs of the appeal.